IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHANAKA ATERA ELLINGTON,   :
 Plaintiff,       :
           :
 v.         :  CIVIL ACTION NO. 25-CV-6184
           :
ANDREA DAVIS, *et al.*    :
 Defendants.     :

**MEMORANDUM**

**WEILHEIMER, J.**             **MAY ᴵ⁴ , 2026**

Shanaka Atera Ellington initiated this *pro se* civil action by filing a Complaint alleging

state law claims against Defendants Andrea Davis and the Unionville-Chadds Ford School District

("the School District"). In a prior Memorandum and Order, the Court granted Ellington's motion

to proceed *in forma pauperis* and dismissed the complaint for lack of subject matter jurisdiction.

*See Ellington v. Davis*, No. 25-6184, 2026 WL 243932, at *3 (E.D. Pa. Jan. 29, 2026). Ellington

then submitted an Amended Complaint, which raises claims under 42 U.S.C. § 1983 against the

same Defendants. (*See* ECF No. 9 at 2.) On screening, the Court will dismiss the Amended

Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.  **FACTUAL ALLEGATIONS**[1]

Ellington states that she was assigned to Unionville High School by Amergis Staffing as a

Behavioral Technician. (Am. Compl. at 4.) She claims that, soon after Defendant Davis started

working as a special education teacher, she saw Davis acting inappropriately toward special

---

[1] The factual allegations are taken from Ellington's Amended Complaint ("Am. Compl."). (*See* ECF No. 9.) The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

education students. (*Id.*) Davis allegedly yelled at them, pushed or pulled on students to move them, and "escalat[ed] situations in a manner that caused students visible distress." (*Id.*) Ellington reported her concerns, leading to an October 7, 2025 meeting with Davis and supervisory staff. (*Id.*) After her shift on October 8, 2025, Amergis Staffing notified Ellington that she had been removed from the Unionville High School assignment and was barred from returning to the Unionville-Chadds Ford School District because of "classroom dynamics." (*Id.*) Before she reported Davis's treatment of special education students, Ellington had allegedly received positive feedback concerning her performance and had not been disciplined for any performance-related issues. (*Id.*)

In her Amended Complaint, Ellington claims that her rights under the First and Fourteenth Amendments were violated by the Defendants. (*Id.* at 2.) She asserts that her removal was retaliatory and that she has suffered loss of income and emotional distress. (*Id.* at 4-5.) She seeks money damages as relief. (*Id.* at 5.)

## II.    STANDARD OF REVIEW

Because the Court granted Ellington *in forma pauperis* status, the Court must screen the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires dismissal if it fails to state a claim. Whether an amended complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the amended complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court will accept the facts alleged in the *pro se* amended complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only

2

whether the amended complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes the allegations of a *pro se* litigant liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 244).

## III.    DISCUSSION

The vehicle by which constitutional claims may be brought in federal court is 42 U.S.C. § 1983.[2] The statute "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each

---

[2] Ellington states she was assigned to Unionville High School by Amergis Staffing, indicating that she was not a school employee. The United States Supreme Court has expressly held that a public contractor is akin to a government employee under the First Amendment when pursuing a retaliation claim based on his or her criticism of the contracting government agency. *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 673 (1996). In other words, employees of independent contractors with the government—like Ellington—are protected by the First Amendment and are treated similarly to public employees for purposes of First Amendment retaliation claims. *Id.*; *cf. Parker v. Sch. Dist. of Phila.* 346 F. Supp. 3d 738 (E.D. Pa. 2018) (adjudicating First Amendment retaliation claim against public school district filed by therapist who was placed at school by staffing agency and allegedly terminated at the direction of the school district when she reported suspected child abuse).

defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### A.    Personal Involvement – Defendant Davis

Ellington has not plausibly alleged that Davis personally violated Ellington's constitutional rights under the First and Fourteenth Amendments, which is required for liability under § 1983 to lie. Ellington asserts that the removal from the Unionville High School assignment and the bar from Unionville-Chadds Ford School System violated her constitutional rights. (Am. Compl. at 4.) As to Davis, however, Ellington merely states that she observed Davis allegedly mistreating special education students in her classroom and that she reported her concerns about Davis to "appropriate school personnel." (*Id.*) Ellington does not identify who made the decision to remove her from Unionville High School, but in any event, Ellington does not contend that Davis was the person who did so or, as a classroom teacher, was even a person with the authority to do so. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (explaining that an individual's presence "in the immediate vicinity" or membership "of a group of which some of the members were guilty of abuses" does not impose § 1983 liability on that person (citations omitted)). Absent specific allegations that Davis took "direct, personal adverse action against [Ellington] for expression of speech," the claims against Davis in the Amended Complaint must be dismissed. *C.W. v. Manasquan Bd. of Educ.*, No. 21-20680, 2023 WL 2264464, at *10 (D.N.J. Feb. 28, 2023) (claim dismissed where plaintiff failed to identify any personal involvement by a named defendant); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal

4

involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### B.    *Monell* Liability – The School District

Local governments and municipalities are considered persons under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Further, a school district is treated as a municipal entity under § 1983. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257-58 (2009). Even under a liberal construction of the Complaint, however, Ellington has not presented a basis for proceeding on her § 1983 claims against the School District.

A municipality is not vicariously liable under § 1983 for the actions of its employees. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that local governments can be liable as "persons" under § 1983, but this liability extends only to "their *own* illegal acts" (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). Rather, to plead a § 1983 claim against a municipality or municipal entity, a plaintiff must allege that the municipality or municipal entity's policy or custom caused the violation of his constitutional rights. See *Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). It is not

enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* However, "if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1985)).

Ellington's *Monell* claim is not plausible because she did not identify any policy or custom of the School District playing a role in the events she alleged in her Amended Complaint, nor did she plead that any policy or custom proximately caused the alleged constitutional violations in this case. *See McTernan*, 564 F.3d at 658 (requiring a plaintiff to specify a policy or custom to meet the pleading standard); *Roman*, 914 F.3d at 798 (requiring a plaintiff to allege that the policy or custom proximately caused his injuries). Further, Ellington does not allege facts in the Amended Complaint that the School District failed to supervise, train, or discipline its employees such that the failure amounted to deliberate indifference to Ellington's constitutional rights. *Forrest*, 930 F.3d at 106. Moreover, Ellington has failed to allege an underlying plausible constitutional

6

violation, and, as a result, she has failed to allege a plausible basis of liability for the School District under *Monell*. *See Mulholland*, 706 F.3d at 238 n.15.

### 1. First Amendment Retaliation

Ellington does not state a plausible First Amendment retaliation claim. "To establish a First Amendment retaliation claim a public employee must show that (1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action." *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014) (citing *Gorum v. Sessoms,* 561 F.3d 179, 184 (3d Cir. 2009)). The first prong is a question of law, and the second is a question of fact. *Id.* A public employee's speech qualifies as "protected activity" when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Gorum*, 561 F.3d at 185 (citations omitted). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). The "controlling factor" is whether the communications are "ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014) (interpreting analysis from *Garcetti*). The test in *Garcetti* asking whether an employee is speaking pursuant to his official duties is a "practical inquiry." *Flora v. County of Luzerne*, 776 F.3d 169, 177 (3d Cir. 2015) (quoting *Dougherty*, 772 F.3d at 987-88).

Ellington fails to elaborate on how her communications constituted "protected activity" under the First Amendment; rather, the few facts alleged in the Amended Complaint lead the Court

to conclude that her communications were made within the course of her official duties. Ellington vaguely states that, while a Behavioral Technician at the school, she "reported [her] concerns" about Davis's alleged treatment of special education students to "appropriate school personnel." (Am. Compl. at 4.)  This act of communicating "up the chain of command" suggests that Ellington's speech was made within her official duties. *Foraker v. Chaffinch*, 501 F.3d 231, 241-43 (3d Cir. 2007) (holding that police officers' reports of dangerous conditions at firing range were made within their official duties because they were required to report that type of information "up the chain of command"), *abrogated on other grounds, Borough of Duryea v. Guanieri*, 564 U.S. 379 (2011).  Moreover, Ellington claims that she took those actions "[c]onsistent with school protocol," which further confirms that this type of communication would be expected from her within the scope of her employment as a Behavioral Specialist. (*Id.*) Thus, the few facts conveying the circumstances of her communications indicate that they were made pursuant to her official duties rather than as a private citizen. *See Houlihan v. Sussex Tech. Sch. Dist.*, 461 F. Supp. 2d 252, 260 (D. Del. 2006) (dismissing First Amendment retaliation claim where school psychologist plaintiff failed to allege that her statements concerning alleged IDEA noncompliance to school administrators were made in her role as a citizen); *Blevis v. Lyndhurst Bd. of Educ.*, No. 06-4857, 2009 WL 3128402, at *6 (D.N.J. Sept. 28, 2009) (granting summary judgment to school system defendants on First Amendment retaliation claim where plaintiff's complaints regarding student safety and administrative issues were made within his job function as a teacher, and not as a citizen).  Consequently, Ellington has not plausibly alleged a First Amendment retaliation claim.

### 2.    Fourteenth Amendment

Ellington references the Fourteenth Amendment in her Amended Complaint, (*see* Am. Compl. at 2), but the Court cannot discern either the legal underpinnings or factual basis for her

intended claim. To the extent that her allegations may be read as asserting a claim under the Equal Protection Clause of the Fourteenth Amendment based on a "class of one" theory, she must allege that she was intentionally treated differently from others similarly situated and that there was no rational basis for the treatment. *See Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment"); *see also Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) ("Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"); *Perano v. Township of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege facts sufficient to make plausible the existence of such similarly situated parties."); *Jones v. Sposato*, 783 F. App'x 214, 217 (3d Cir. 2019) (*per curiam*) (general allegations that plaintiff was treated "less favorably" are not sufficient). Because Ellington has not alleged that there are others who are "similarly situated" to herself or that she was treated differently than staff who engaged in similar conduct, she has not stated a plausible claim for a violation of the Fourteenth Amendment. Accordingly, Ellington's § 1983 claims alleged against the School District will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The dismissal of claims against Davis will be with prejudice and the dismissal of claims against the School District will be without prejudice. Ellington may submit a second amended complaint if she is capable of curing the defects with the *Monell* claim the Court has identified. An appropriate Order will be entered separately which

provides further instructions should Ellington wish to amend her Amended Complaint against the School District.

BY THE COURT:

_[signature]_

**GAIL A. WEILHEIMER, J.**
